IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DONNA R. HARGOVE,

       Plaintiff,

vs.                                   CASE NO. 1:11-cv-54-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions.  (Docs. 17 and 18.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on April 7, 2006 alleging a disability onset date of November 1, 2003.  (R. 15, 123-30.)  Plaintiff's applications were denied initially and upon reconsideration and Plaintiff then filed a timely request for an administrative hearing.  (R. 52-65, 72-77.)

Plaintiff appeared and testified at an administrative hearing that was held on April 13, 2009.  (R. 25-50.)  On July 28, 2009, the Administrative Law Judge ("ALJ") issued a written decision concluding Plaintiff was not disabled and thus was not entitled to a period of disability insurance benefits or to supplemental security income benefits.  (R. 13-20.)  Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council and the Appeals Council denied Plaintiff's request for review on January 24, 2011.  (R. 1-5.)  Plaintiff then filed her Complaint on March 25, 2011.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole,

---

[1] See 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[4] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

3

not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]  The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

--------

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.  Personal Background

Plaintiff was 28 years old as of the date of the ALJ's decision.  (R. 22.)  She has a limited education and past work experience in several unskilled positions.  (R. 21.)

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

B.      **Evidence Considered By the ALJ**

The evidence considered by the ALJ consisted primarily of Plaintiff's medical records from 2002 onward as well as the reports prepared by several consulting physicians.

Plaintiff was treated for systemic lupus erythematosus ("SLE" or "lupus") at the University of Florida College of Medicine's Rheumatology Clinic (the "Rheumatology Clinic") in Gainesville from at least 2001 onward.[21]  (R. 261.)  A note in the record dated September 23, 2002 by Dr. Hanno Richards, a rheumatologist at the clinic, reflected Plaintiff suffered from a "very active disease" of lupus over the past year and opined Plaintiff was not fit for any gainful activity.  (*Id.*)

Records from October 13, 2004 reveal Plaintiff reported to the emergency room at Shands at the University of Florida Hospital ("Shands at UF") in Gainesville for a flare-up of her lupus. (R. 270-81.) She presented with diffuse joint pain and swelling in both hands, both shoulders, both feet and her left knee and she reported the pain and swelling were so severe she was unable to walk or take care of her children.  (R. 270, 271, 279.)  Dr. Elena Barnes, a rheumatologist, was consulted to assist with Plaintiff's treatment. (R. 271-73.)  On musculoskeletal examination Plaintiff was grossly positive for synovitis, including warmth, tenderness, and effusion over the left ankle, left knee, bilateral wrists, and bilateral shoulders, with decreased active and passive range of motion secondary to synovitis.  (R. 272.)  There was also "impressive" tenosynovitis overlying the wrists and dorsum of the feet and Plaintiff was unable to ambulate due to

---

[21] It is unclear from the record exactly when Plaintiff began receiving treatment at the Rheumatology Clinic, but the earliest visit reflected in the record is September 23, 2002.  (R. 261.)

the synovitis in her ankles.  (*Id.*)  Dr. Barnes noted Plaintiff presented with "relatively acute" polyarthritis and synovitis and she diagnosed Plaintiff with known SLE and current arthritis flare-up with an active joint count of more than six.  (R. 273.)

On October 25, 2004 Plaintiff was again admitted to Shands at UF for another SLE flare-up.  (R. 282-91.)  She presented with a very painful flare-up of polyarthritis secondary to lupus.  (R. 282.)  She was placed on IV narcotics to try to control her pain and underwent a nerve block to control her foot pain.  (*Id.*)  Plaintiff also reported left flank pain on admission and underwent both a CT scan and an MRI of her left flank area, which showed a hypodense lesion and two cysts on her left kidney.  (*Id.*)  She was seen by a rheumatologist, Dr. Michael Rozboril, who started her on Duragesic patches with Tylox for pain.  (R. 284-85.)  Upon examination Plaintiff exhibited inflammation and swelling on both feet, with the left foot being particularly painful, and effusions on both knees.  (R. 284.)  Dr. Roxboril opined the flare-up in Plaintiff's lupus was likely precipitated by Plaintiff's recent delivery of twins.  (R. 285.)  Plaintiff was discharged on November 1, 2004 with discharge diagnoses of SLE, inflammatory polyarthritis secondary to lupus, chronic anemia and hypertension.  (R. 282.)

Between March 2005 and March 2006, Plaintiff received treatment on multiple dates from the emergency room at Shands at AGH Hospital ("Shands at AGH") in Gainesville for her lupus.  (R. 292-302.)  Records from a visit on March 16, 2005 reflected Plaintiff complained all her joints hurt and she could not stop throwing up.  (R. 294.)  On examination, she was in moderate distress with nausea and vomiting and was diagnosed with lupus and an arthritis flare-up.  (R. 293-94.)  On July 22, 2005, she again presented complaining of nausea, vomiting and joint pain. (R. 295-97.)

Examination revealed tenderness in all her joints in the upper and lower extremities. (R. 296.) She was diagnosed with exacerbation of lupus, nausea, vomiting, leukocytosis, hypokalemia and a urinary tract infection. (R. 297.) Progress notes from another visit to the ER at Shands at AGH on October 3, 2005 reflected Plaintiff had a bladder infection. (R. 298-300.) Finally, on March 4, 2006, Plaintiff again visited the ER at Shands at AGH, this time for complaints of chest pain. (R. 301-02.) She rated her pain as a 10 out of 10 and underwent an EKG that showed atrial flutter/fibrillation and probable left ventricular hypertrophy. (*Id.*)

Plaintiff was treated between September 2006 and April 2008 at the Alachua County Health Department for her lupus. (R. 345-59.) On September 27, 2006, Plaintiff reported arthralgia and a pruritic rash on her left arm and back. (R. 345.). Her blood pressure was elevated and she was diagnosed with discoid lupus and SLE. (*Id.*) On October 13, 2006 Plaintiff reported continued pain from her lupus and examination revealed tenderness in her back. (R. 346.) On October 27, 2006, Plaintiff reported her arthralgias had increased and she was again diagnosed with SLE and hypertension. (R. 347.) On March 19, 2007 Plaintiff reported experiencing nausea and vomiting and bad headaches. (R. 353.) On examination, Plaintiff had an anxious affect and was short tempered, and she was diagnosed with lupus, pain, and nausea. (*Id.*) On March 27, 2007, Plaintiff reported joint pain, neck pain and fatigue and she appeared anxious. (R. 351.)

On April 25, 2007, Dr. Lance Chodosh performed a consultative physical examination of Plaintiff. (R. 304-12.) On examination Plaintiff exhibited some potential soft tissue swelling in both prepatellar areas. (R. 307.) When walking Plaintiff exhibited

8

a stiff gait with a slight limp favoring her left leg and she could not walk on heels and toes nor squat and rise.  (*Id.*)  Plaintiff also had extensive areas of patchy hyperpigmentation on her torso and extremities.  (*Id.*)  Dr. Chodosh diagnosed Plaintiff with SLE with definite skin changes, probable depression and frequent nausea with intermittent vomiting.  (R. 308.)  Dr. Chodosh opined Plaintiff was probably able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear and speak normally.  (*Id.*)

On May 5, 2007, non-examining consultative physician Dr. Edward DeMiranda completed a Physical Residual Functional Capacity Evaluation Assessment of Plaintiff.  (R. 313-20.)  He concluded Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and stand, sit and/or walk for a total of about 6 hours in an 8 hour workday.  (R. 314.)  He further concluded Plaintiff was limited in her ability to reach in all directions, including overhead, and in support of this conclusion stated Plaintiff's repetitive overhead reaching with her right arm may be impaired due to her limitation of movement in that shoulder.  (R. 316.)

On May 9, 2007, consulting psychologist Jeffrey Gedney, Psy.D. examined Plaintiff.  (R. 321-23.)  Plaintiff reported getting stressed out and overwhelmed with daily activities and said it was difficult for her to concentrate.  (R. 322.)  She further reported it was necessary to pace herself when doing activities to prevent pain flare-ups.  (*Id.*)  Examination revealed Plaintiff was quiet and subdued, and her mood was dysphoric and her affect flat.  (*Id.*)  Plaintiff's memory for remote and recent information was poor and she had difficulty providing clear, concise responses to interview questions.  (*Id.*)

Dr. Gedney diagnosed Plaintiff with pain disorder associated with both psychological factors and a general medical condition, major depressive disorder, generalized anxiety disorder, and lupus.  (R. 323.)  He further assigned Plaintiff a GAF of 55[22] and opined Plaintiff's prognosis for returning to work was "poor given the chronic nature of her medical condition and its psychiatric impact."  (*Id.*)

Non-examining consultative physician Dr. Angeles Alvarez-Mullin completed a Psychiatric Review Technique assessment of Plaintiff dated June 6, 2007.  (R. 324-37.) Dr. Alvarez-Mullin concluded Plaintiff had pain disorder associated with both psychological factors and a medical condition, generalized anxiety disorder, and major depressive disorder.  (R. 336.)  Dr. Alvarez-Mullin opined Plaintiff had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.  (R. 334.)  The doctor also noted although Plaintiff "experiences psych[ological] distress it does not appear that she is limited by a severe mental impairment."  (R. 336.)

On May 7, 2007 the progress notes from Plaintiff's visit to the Alachua County Health Department reflected Plaintiff was unable to work or participate in other activities permanently due to lupus.  (R. 350.)  On June 24, 2007, Plaintiff reported pain all over her body as well as vomiting and diarrhea.  (*Id.*)  She appeared to be in moderate pain, was diagnosed with SLE and arthralgia, and was referred to pain management.  (*Id.*) On July 27, 2007 Plaintiff complained of pain in her neck and vomiting, and examination

---

[22] Global Assessment of Functioning, or GAF, is a measure of an individual's psychological, social and occupational functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). Scores range from 0 to 100 and a score between 51 to 60 represents moderate symptoms or moderate difficulties in social, occupational or school functioning.  Id. at 34.

revealed decreased rotation in her neck.  (R. 354-55.)  She was diagnosed with a strained muscle, lupus, acute gastritis and drug seeking behavior.  (*Id.*)  On August 23, 2007 Plaintiff reported being in "a lot of pain" and she was again diagnosed with lupus. (R. 356-57.)  Progress notes from an April 30, 2008 visit reflected Plaintiff reported pain all over her body and nausea. (R. 358-59.)  Examination reflected Plaintiff had edema of the right hand and she was diagnosed with lupus with nausea and vomiting.  (*Id.*)

On January 21, 2009, Dr. Eric Sobel, Plaintiff's treating rheumatologist at the Rheumatology Clinic, completed a form assessing Plaintiff's condition for the Alachua County Department of Community Support Services. (R. 338.)  On the form, Dr. Sobel opined Plaintiff was unable to work for most likely a year or longer due to her lupus, arthritis, rash, depression, and fatigue. (*Id.*)  He also stated Plaintiff's condition had not been very responsive to medication, making a prognosis difficult.  (*Id.*)

Plaintiff was examined on March 24, 2009 at the Rheumatology Clinic by Dr. John Cole and Dr. Sobel.  (R. 339-41.)  She reported fairly prominent joint pain that caused her several hours of morning stiffness, some difficulty sleeping at night, and some skin lesions and fairly sensitive skin on her back.  (R. 339.)  She also reported having suffered from constipation for the past several days and fairly chronic nausea and vomiting.  (*Id.*)   Examination revealed some tenderness of the joints in Plaintiff's bilateral upper extremities, particularly the second and third MCP on both hands, and minimal tenderness in the right wrist but more so with active range of motion.  (R. 340.) Plaintiff also had areas of post-inflammatory hyperpigmentation on her back and bilateral elbows as well as recent healing scabs on the mid back area and she was very

tender to light touch on the back.  (*Id.*)  Dr. Sobel noted Plaintiff had experienced a

"recent increase in arthritic disease activity by symptoms and physical examination" and

also stated Plaintiff "is incapable of working."  (*Id.*)  He also noted Plaintiff's "bigger

problem is marked depression," which he stated was interfering with all aspects of

Plaintiff's life and causing Plaintiff not to function well.  (*Id.*)

Plaintiff was again hospitalized at Shands at AGH from June 30, 2009 through

July 2, 2009 due to another flare-up of her lupus. (R. 147-49.) The progress note

reflected Plaintiff had experienced a significant decrease in her functional status due to

her symptoms.  (R. 149.)

### C.   <u>Hearing Testimony</u>

Plaintiff testified at her April 13, 2009 administrative hearing.  (R. 26-49.)  She

testified she had completed eleventh grade.  (R. 28.)  She testified she had previously

worked in fast food restaurants, as a maid for a cleaning service, in day care, and as a

cashier at a pizza establishment.  (R. 30.)  She testified her main medical issue is

lupus, which she was diagnosed with in 2001. (*Id.*)   Her lupus causes rashes all over

her body, painful swelling and stiffness in her joints, sores in her mouth and nose, and

some hair loss.  (R. 30-32.)  She testified the pain is the worst in her hands and feet,

and  almost every morning her hands swell so badly she cannot write or dress herself,

while several times a month her feet swell so badly she cannot walk.  (R. 34-35, 37-38.)

She also suffers from frequent nausea and vomiting.  (R. 34.)  She estimated she visits

the emergency room nearly every week and she has been admitted to the hospital for

extended periods of time 25-30 times between 2003 and 2009 for flare-ups of her

symptoms. (R. 32-34.)  Plaintiff also testified she has depression, anxiety, concentration

and memory problems, as well as frequent headaches.  (R. 40-43, 49.)

### D.   Findings of the ALJ

In his decision the ALJ concluded Plaintiff had the severe impairments of

systemic lupus erythematosus, arthralgia, a major depressive disorder, and a

generalized anxiety disorder.  (R. 15.)  He determined Plaintiff did not have an

impairment or combination of impairments that met or equaled the Listings.  (R. 16.)

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to

lift or carry 20 pounds occasionally and 10 pounds frequently; sit/stand and/or walk

(with normal breaks) for about six hours each in an eight hour day with occasional

balancing, stooping, kneeling, crouching, and crawling; "some" reaching limitations

(including overhead reaching); and had limitations regarding the avoidance of

concentrated exposure to extreme cold, vibrations, fumes, and hazards (heights).  (*Id.*)

From a mental standpoint, the ALJ concluded Plaintiff had the RFC to perform simple,

repetitive, non-complex, unskilled sedentary work.  (*Id.*)

The ALJ concluded Plaintiff could not perform any of her past relevant work.  (R.

21.)  Based on Plaintiff's RFC, the ALJ concluded Plaintiff was not disabled at Step Five

of the sequential analysis based on a mechanical application of the Grids, noting a

finding of not disabled was directed by Medical-Vocational Rule 201.24.  (*Id.*)  He thus

concluded Plaintiff had not been under a disability from November 1, 2003, the alleged

disability onset date, through the date of his July 28, 2009 decision.  (R. 21-22.)

## IV.  DISCUSSION

Plaintiff contends that the Commissioner committed three errors in the ALJ's written decision.  First, she argues the Commissioner erred in failing to obtain vocational expert ("VE") testimony despite the ALJ's conclusion she had "some" reaching limitations (including overhead reaching) and was limited to the performance of repetitive tasks.  Second, Plaintiff contends the Commissioner erred in failing to analyze the opinions of Plaintiff's treating rheumatologist, Dr. Eric Sobel, and Dr. Jeff Gedney, the consulting psychologist.  Third, Plaintiff contends the Commissioner should have obtained 1600 pages of her medical records when her counsel made the ALJ aware both prior to her administrative hearing and at that hearing that these medical records existed. The Court will address each issue below.

### A.      The Medical Opinions of Drs. Sobel and Gedney

Plaintiff contends the ALJ erred in failing to address the opinions of treating physician Dr. Eric Sobel and consulting psychologist Dr. Jeffrey Gedney.  Despite the fact that Dr. Sobel was one of Plaintiff's treating physicians at the Rheumatology Clinic, the ALJ did not even mention, let alone discuss, any of Dr. Sobel's opinions. Further, the ALJ completely failed to discuss the medical opinion expressed by Dr. Gedney, the consulting psychologist.  The Court agrees that the ALJ's complete failure to address these opinions warrants reversal and remand to the Commissioner.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is

shown to the contrary.[23]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

With regard to other medical opinions "the ALJ [is] required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[25]  While there is no requirement for the ALJ to discuss every medical record in the administrative record, he is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[26]  Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[27] the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.[28]  Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[29]

---

[23] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997))("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[24] 20 C.F.R. § 404.1527(d)(2).

[25] Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987.)

[26] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[27] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[28] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[29] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

In this case the ALJ failed to follow these principles with respect to his evaluation and treatment of the opinions of Drs. Sobel and Gedney. The Court will address the ALJ's treatment of each doctor's respective medical opinion below.

### 1.    Dr. Sobel's Opinion

On January 21, 2009, Dr. Eric Sobel, Plaintiff's treating rheumatologist at the Rheumatology Clinic, completed a form assessing Plaintiff's condition for the Alachua County Department of Community Support Services. (R. 338.)  On the form, Dr. Sobel opined Plaintiff was unable to work for most likely a year or longer due to lupus, arthritis, rash, depression, and fatigue.  (*Id.*)  He also expressed the opinion that Plaintiff's condition had not been very responsive to medication, making a prognosis difficult.  (*Id.*)

Plaintiff was examined on March 24, 2009 by Dr. John Cole and Dr. Sobel at the Rheumatology Clinic.  (R. 339-41.)  Examination revealed some tenderness of the joints in Plaintiff's bilateral upper extremities, particularly the second and third MCP on both hands, and minimal tenderness in the right wrist but more so with active range of motion.  (R. 340.)  Plaintiff had areas of post-inflammatory hyperpigmentation on her back and bilateral elbows as well as recent healing scabs on the mid back area and she was very tender to light touch on the back.  (*Id.*)  Dr. Sobel noted Plaintiff had experienced a "recent increase in arthritic disease activity by symptoms and physical examination" and also stated Plaintiff "is incapable of working."  (*Id.*)  He noted Plaintiff's "bigger problem is marked depression," which he stated was interfering with all aspects of Plaintiff's life and causing Plaintiff not to function well.  (*Id.*)

In his written decision, the ALJ completely ignored these opinions expressed by Dr. Sobel.  The ALJ made no mention of Dr. Sobel, his opinions, or even the exhibit numbers in the record (17F, 18F and 18F) corresponding to Plaintiff's treatment with Dr. Sobel.

While the Commissioner is not required to accept Dr. Sobel's conclusion that Plaintiff is incapable of working, as that is an opinion on a matter reserved to the Commissioner,[30] it was, nonetheless, error for the ALJ to completely fail to address Dr. Sobel's opinions in any manner.

In response to this shortcoming the Commissioner argues that the ALJ is not required to refer to every single piece of evidence in the record. Further, the Commissioner suggests that because the ALJ stated he had considered all of the evidence in the record and cited to several Social Security Rulings dealing with how the Commissioner is required to deal with the opinions of treating physicians, this statement is sufficient to comply with the treating physician rule. That is not the case.  A generic "statement that the ALJ has considered all of the opinion evidence is not sufficient to discharge his burden to explicitly set forth the weight accorded to that evidence."[31]

Accordingly, this case should be remanded to the Commissioner with instructions to properly consider and determine the appropriate weight to be accorded to the medical opinions expressed by Dr. Eric Sobel.

## 2.      Dr. Gedney's Opinion

---

[30] 20 C.F.R. § 404.1527(e).

[31] Lawton v. Commissioner of Social Sec., 431 Fed. Appx. 830, 833-35 (11th Cir. 2011)(*per curiam*).

On May 9, 2007, consulting psychologist Jeffrey Gedney, Psy.D. examined Plaintiff.  (R. 321-23.)  His examination revealed Plaintiff was quiet and subdued, her mood was dysphoric and her affect flat.  (R. 322.)  Plaintiff's memory for remote and recent information was poor and she had difficulty providing clear, concise responses to interview questions.  (*Id.*)  Dr. Gedney diagnosed Plaintiff with pain disorder associated with both psychological factors and a general medical condition, major depressive disorder, generalized anxiety disorder, and lupus.  (R. 323.)  He assigned Plaintiff a GAF of 55 and opined Plaintiff's prognosis for returning to work was "poor given the chronic nature of her medical condition and its psychiatric impact."  (*Id.*)

Plaintiff contends the ALJ completely ignored the medical opinions expressed by Dr. Gedney in his report.  As was the case with Dr. Sobel, the ALJ made no mention of Dr. Gedney, his report or the conclusions expressed in that report, or even mentioned the exhibit number in the record (15F) corresponding to Dr. Gedney's report.

The Commissioner argues that Dr. Gedney's medical opinion is somehow subsumed within the opinions expressed in the Psychiatric Review Technique completed by non-examining consulting physician Dr. Angeles Alvarez-Mullin.  This argument ignores the point – the ALJ completely ignored Dr. Gedney's medical opinions and failed to discuss Dr. Gedney's opinion even in a summary fashion in his written decision.  The ALJ should have at least addressed Dr. Gedney's opinion and provided a reason for considering or not considering this opinion. The failure to do so requires remand so the ALJ properly can consider and determine the appropriate weight to be accorded to the medical opinions expressed by Dr. Gedney.

**B.**   **Plaintiff's Reaching Limitation and Repetitive Work Limitation**

Plaintiff contends the ALJ erred in failing to obtain VE testimony because the ALJ determined that Plaintiff's RFC included some reaching limitations and was limited to repetitive work.

At step five of the sequential analysis, the burden of proof shifted to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy.[32]  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[33]  This burden may sometimes be met through exclusive reliance on the Grids when each variable on the appropriate Grid accurately describes the claimant's situation.[34]  Where a claimant has one or more non-exertional limitations that significantly limit basic work skills, however, exclusive reliance on the Grids is not appropriate.[35]

In his written decision, the ALJ determined Plaintiff had the RFC to lift or carry 20 pounds occasionally and 10 pounds frequently; sit/stand and/or walk (with normal breaks) for about six hours each in an eight hour day with occasional balancing, stooping, kneeling, crouching, and crawling; "some" reaching limitations (including overhead reaching); and had limitations regarding the avoidance of concentrated exposure to extreme cold, vibrations, fumes, and hazards (heights).  (R. 16.)  From a

---

[32] Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[33] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[34] See Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[35] Walker, 826 F.2d at 1002-03.

mental standpoint, the ALJ concluded Plaintiff had the RFC to perform simple, repetitive, non-complex, unskilled sedentary work.  (*Id.*)

An inability to perform activities involving overhead reaching constitutes a non-exertional limitation.[36]  Thus, according to the ALJ's own assessment of Plaintiff's RFC, Plaintiff's impairments caused both exertional and non-exertional limitations.  Reaching is a basic work activity "required in almost all jobs."[37]  As such, limitations on reaching may eliminate a large number of occupations a person could otherwise perform. Notably, "varying degrees of limitations would have different effects, and the assistance of a [VE] may be needed to determine the effects of the limitations."[38]  While a VE may be able to identify unskilled sedentary jobs which Plaintiff could perform that do not require any overhead reaching, it was nevertheless improper for the ALJ to rely exclusively upon the Grids to direct a finding of not disabled after the ALJ had found that Plaintiff had "some" limitations regarding reaching but did not specify what exactly those limitations were.[39]  Accordingly, on remand the ALJ should clarify the extent of Plaintiff's reaching limitations and then, if appropriate, obtain testimony from a vocational expert to address the extent to which Plaintiff's reaching limitations would erode the base for unskilled sedentary work.

---

[36] 20 C.F.R. § 404.1569a(c)(1)(vi).

[37] SSR 85-15. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28.

[38] SSR 85-15.

[39] 20 C.F.R. § 404.1569a(d).

Plaintiff also argues the ALJ erred in not making an explicit finding as to the impact Plaintiff's limitation to repetitive work activities had on the sedentary base.  On remand, if the ALJ again determines Plaintiff is limited to simple, repetitive, non-complex, unskilled sedentary work, then he should also make a finding as to whether that restriction affects a wide range of work across the given exertional level.

### C.   Plaintiff's Medical Records

Lastly, Plaintiff claims the ALJ erred in failing to order copies of her medical records despite several requests by her counsel.

A Social Security claimant is responsible for providing specific medical evidence to determine whether the claimant is disabled or not,[40] as the claimant bears "the ultimate burden of producing sufficient evidence to show the existence of a disability."[41] Pursuant to the applicable Social Security regulations, however, the Commissioner will pay the reasonable cost of providing existing medical records the Commissioner needs or requests.  *Id.*  Regardless of whether a claimant is represented by counsel, the ALJ has a basic obligation to fully and fairly develop the record[42] because a hearing before the ALJ is intended to be "inquisitorial rather than adversarial" in nature.[43] The duty is triggered, for example, when there is an ambiguity in the record or when the record is

---

[40] 20 C.F.R. § 404.1514.

[41] Allison v. Apfel, No. 99-4090, 2000 WL 1276950, at *5 (6th Cir. Aug. 30, 2000).

[42] Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

[43] Sims v. Apfel, 530 U.S. 103 (2000).

inadequate to allow for proper evaluation of the evidence.[44]  "There is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record."[45]  Instead the determination depends upon the facts and circumstances of a particular case.

In this case, Plaintiff claims the ALJ failed to fully and fairly develop the record because the ALJ did not obtain 1,600 pages of Plaintiff's medical records from the Alachua County Health Department, Shands at AGH, Shands at UF and the Rheumatology Clinic.  Plaintiff's counsel made this request in writing prior to the Plaintiff's administrative hearing.  (R. 230-33.)  At the administrative hearing, Plaintiff's counsel renewed the request, but when questioned by the ALJ as to what appeared in the requested medical records Plaintiff's counsel was unsure of the contents of those records.  (R. 26, 36.)  Plaintiff's counsel also stated she did not know how to limit the scope of the records request to just those records relevant to the disability determination and asked the ALJ if he knew how to do so, to which the ALJ responded "Yes, you go down there and look at them."  (R. 36)

The ALJ in this case was not required to blindly request thousands of pages of medical records upon request by the Plaintiff's counsel.  No information was presented to the ALJ for the ALJ to determine whether the records were necessary to the evaluation as to whether Plaintiff was disabled.  While Plaintiff stated at the hearing that she believed at least some of the records related to the flare-ups of her lupus, Plaintiff's

---

[44] *See* 20 C.F.R. §§ 404.1512(e), 404.1519a.

[45] Lashley v. Sec'y of Health & Hum. Servs., 708 F.2d 1048, 1052 (6th Cir. 1983).

counsel stated that she did not know what was in the records.

If some of the records are indeed identified as relevant to Plaintiff's lupus, then the ALJ has a duty to obtain and consider those medical records in determining whether Plaintiff is disabled.  Accordingly, on remand, Plaintiff's counsel should identify which of the 1,600 pages of medical records are relevant to Plaintiff's lupus so that the ALJ can then make an informed and intelligent decision as to whether the ALJ needs to obtain the medical records in determining whether Plaintiff is disabled.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) with instructions for the ALJ to (i) to analyze the medical evidence and medical opinions expressed by Drs. Eric Sobel and Jeffrey Gedney as required by applicable law, regulations and rulings, (ii) make a specific finding as to the extent of Plaintiff's reaching limitations, (iii) determine how those reaching limitations impact and/or erode the sedentary base, and (iv) if the ALJ again determines Plaintiff is limited to simple, repetitive, non-complex, unskilled sedentary work, then he should also make a finding as to whether that restriction affects a wide range of work across the given exertional level.

**IN CHAMBERS** in Gainesville, Florida, on March 15, 2012.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

24